UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 23-0063 JGB (SHKx) | Date | December 7, 2023 |
|---|---|---|---|
| Title | *Trustees of the Operating Engineers Pension Trust, et al. v. M.V.C. Enterprises, Inc.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiffs' Motion for Default Judgment (Dkt. No. 26); and (2) VACATING the December 11, 2023 Hearing (IN CHAMBERS)

Before the Court is a motion for default judgment against Defendant M.V.C. Enterprises, Inc. ("M.V.C." or "Defendant") filed by Plaintiffs Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Savings Trust, Trustees of the Operating Engineers Training Trust, Trustees of the Operating Engineers Local 12 Defined Contribution Trust, Engineers Contract Compliance Committee Fund, and Southern California Partnership for Jobs Fund (collectively, "Trust Funds" or "Plaintiffs"). ("Motion," Dkt. No. 26). The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the Motion, the Court **GRANTS** the Motion and **VACATES** the December 11, 2023 hearing.

## I.   BACKGROUND

On January 13, 2023, Plaintiffs filed a complaint against M.V.C. ("Complaint," Dkt. No. 1.) The Complaint alleges breach of written collective bargaining agreement and violation of Section 515 of ERISA. (See id.) On April 13, 2023, Plaintiffs filed an ex parte application requesting that the Court authorize service of the summons and Complaint on the California Secretary of State, asserting that Plaintiffs had attempted to serve Defendant four times but failed to do so because Defendant and its CEO were intentionally evading service. (Dkt. No. 10; see Dkt. No. 11 at 2.) Plaintiffs also requested a 90-day enlargement of time in which to serve Defendant. (Id.) The Court granted that Application on April 19, 2023. (Dkt. No. 13.)

On May 24, 2023, Plaintiffs filed a proof of service indicating that they had served Defendant by hand delivery of the summons and complaint to the California Secretary of State. ("Proof of Service," Dkt. No. 14.) Despite being served with the summons and Complaint, M.V.C. failed to file a responsive pleading within the time prescribed by the Federal Rules of Civil Procedure. Indeed, M.V.C. has altogether failed to defend itself in this action.

On August 1, 2023, the Court issued an Order to Show Cause as to why the action should not be dismissed for lack of prosecution given Plaintiffs' failure to request that the Clerk enter default after Defendant's failure to respond to the Complaint. ("OSC," Dkt. No. 16.)

On August 7, 2023, Plaintiffs filed a request for entry of default against M.V.C. ("Default Request," Dkt. No. 17.) The same day, the Clerk entered default against M.V.C. ("Entry of Default," Dkt. No. 18.) The Court admonished Plaintiffs about their failure to respond in writing to the OSC in violation of the Court's Order, but nonetheless discharged the OSC given Plaintiffs' prompt request for entry of default. (Dkt. No. 19.)

On September 1, 2023, Plaintiffs filed their first motion for default judgment. (Dkt. No. 20.) Plaintiffs filed multiple declarations and exhibits in support of that motion. (See Dkt. Nos. 22–24.) The motion was not opposed. Even so, the Court did not reach the substance of that motion because Plaintiffs failed to satisfy the procedural requirements for entry of default judgment. (See "Order on First MDJ," Dkt. No. 25.) Specifically, Plaintiffs' declarations did not set forth the information required by Local Rule 55.1. The Court denied the motion on that basis and ordered that Plaintiffs may file a procedurally proper version of the motion no later than October 12, 2023. (Id.)

On October 12, 2023, Plaintiffs filed the instant Motion and a memorandum of points and authorities in support of that motion. ("Motion," Dkt. No. 27.) Plaintiffs also filed the following declarations and exhibits:

- Declaration of Douglas Waite ("Waite Declaration," Dkt. No. 28);
- Declaration of Marija Kristich Decker and attendant Exhibits A – B ("Decker Declaration," Dkt. No. 29); and,
- Declaration of Bernardo Ramos and attendant Exhibits A – M ("Ramos Declaration," Dkt. No. 30).

No opposition was filed.

##  II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), a court may order default judgment following the entry of default by the Clerk of the Court. Local Rule 55-1 requires an application to the Court for default judgment be accompanied by a declaration that conforms to the requirements of Federal Rule of Civil Procedure 55(b) and sets forth the following information:

>(1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Relief Act does not apply; and (5) that notice of the application has been served on the defaulting party, if required.

L.R. 55-1.

Whether to enter default judgment is within the sound discretion of the district court. Aldabe v. Aldabe, 616 F.2d 1089, 1092-93 (9th Cir. 1980). In Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set forth the following factors for consideration in determining whether to grant default judgment:

>(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 ("Eitel factors"). Upon entry of default, the well-pleaded factual allegations of a complaint are deemed true; however, allegations pertaining to the amount of damages must be proven. TeleVideo Systems Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). To obtain a default judgment, a plaintiff must provide evidence of damages, and a court may rely only on the evidence submitted by the plaintiff or on evidence offered during a full evidentiary hearing, if ordered by the Court. Fed. R. Civ. P. 55(b)(2). Further, the damages sought must not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### III. DISCUSSION

Plaintiffs move the Court to enter default judgment against M.V.C. Plaintiffs seek to recover s "principal amount of $25,855.36 (consisting of fringe benefit contributions of $16,293.70, liquidated damages of $4,455.83, prejudgment interest of $4,455.83, and audit fees of $650.00), attorneys' fees of $24,083.73, and costs of $844.90, plus post-judgment interest" arising out of Defendant's alleged breach of obligations to the Trust Funds. (Motion at 19.) For default judgment to be entered in their favor, Plaintiffs must meet the procedural requirements described above and establish that, on balance, the Eitel factors weigh in their favor. The Court evaluates these factors below.

//

### A. Procedural Requirements

Plaintiffs have satisfied the procedural requirements for entry of default judgment by the Court. Pursuant to Federal Rule of Civil Procedure 55, Plaintiffs did not petition for entry of default judgment until after default was entered against Defendant by the Clerk. (See Default Request; Entry of Default.) Additionally, the Decker Declaration sets forth the information required by the Local Rules of this Court. (See Decker Decl. ¶¶ 7-10.) Plaintiffs' counsel also represents that notice of the Application was served on Defendant on October 12, 2023. (Dkt. No. 26 at 2.) Thus, Plaintiffs have complied with the applicable Local Rules and Federal Rules.

### B. Eitel Factors

#### 1. Possibility of Prejudice to Plaintiff

Plaintiffs would suffer prejudice if the Court does not enter default judgement. Defendant was served summons and the Complaint on May 5, 2023, but never filed a responsive pleading, nor made any appearance in this action. (See Dkt. No. 14.) Because Defendant has failed to defend this action, a default judgment is the only means by which Plaintiffs may prevail. Absent a default judgment by this Court, Defendant will have avoided liability simply by not engaging in good faith with Plaintiff's' action. This factor thus weighs in favor of default judgment. See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding the plaintiff would suffer prejudice absent entry of a default judgment because of the defendant's unwillingness to cooperate and defend against the claim).

#### 2. Substantive Merits of Plaintiffs' Claims

The second and third Eitel factors concern the merits of Plaintiffs' substantive claims and the complaint's sufficiency. Eitel, 782 F.2d at 1471-72. "The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) (internal citation omitted); see also Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). Here, this factor favors default judgment.

Plaintiffs allege that they are the trustees of the following five express trusts (collectively, the "Trusts") created pursuant to written declarations of trust (the "Trust Agreements") between the International Union of Operating Engineers, Local Union No. 12 ("Local 12"), and various other associations in the Southern California and Southern Nevada construction industry: Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Savings Trust, Trustees of the Operating Engineers Training Trust, and Trustees of the Operating Engineers Local 12 Defined Contribution Trust (collectively, the "Trustees"). (Complaint ¶ 5.) The two non-trustee Plaintiffs are (1) Engineers Contract Compliance Committee Fund, established by Local 12 in accordance with Section 6(b) of the Labor Management Cooperation Act of 1978; and (2) Southern California Partnership for Jobs Fund, an

industry-wide advancement fund established by the employers and Local 12. (Id. ¶ 6.) Defendant M.V.C. Enterprises, Inc. is a California corporation doing business as Moreno Valley Constriction and has its principal place of business in Temecula, California. (Id. at ¶ 7.)

Plaintiffs allege in their Complaint that Defendant is bound to the terms and conditions of the following contracts: (1) the Community Workforce Agreement by and between Antelope Valley College and Los Angeles and Orange Counties Building and Construction Trades Council and the Signatory Craft Councils and Union for Construction Projects and Major Rehabilitation (the "AVC PLA"); (2) the Community Workforce Agreement by and between the Santa Ana Unified School District and Los Angeles and Orange Counties Building and Construction Trades Council and the Signatory Craft Councils and Unions for Construction, Repair, Upgrade, Renovation, Modernization, Expansion, Rehabilitation and Improvement Work ("SAUSD PLA"); (3) the incorporated Master Labor Agreement ("Master Agreement") in effect between International Union of Operating Engineers, Local Union No. 12 ("Local 12") and the Southern California Contractors Association, Inc., a multi-employer association; and, (4) the trust agreements ("Trust Agreements") establishing each of the Trusts. (Complaint ¶¶ 8–15; see Ramos Decl. ¶¶ 8–15, Exs. A – H.) The Master Agreement requires Defendant make monthly payments of fringe benefit contributions to Plaintiffs for hours worked by or paid to Defendant's employees performing covered work on four public works projects (the "Subject Projects"). (Complaint ¶ 21; see Ramos Decl. ¶ 17, Exs. A, G.)

Pursuant to the terms of the Master Agreement and related Trust Agreements, Defendant is responsible for calculating and reporting the amount of fringe benefit contributions due by completing monthly contribution report forms and submitting them to Plaintiffs. (Complaint ¶ 21.) Defendant agreed to allow Plaintiffs to conduct audits of records to determine if the contributions were properly paid. (Id.) Plaintiffs allege that "Defendant reported hours and related fringe benefit contributions to Plaintiffs for work performed by its employees on the Subject Projects during the work months of June 2021 through July 2021, but failed to submit payment of the corresponding fringe benefit contributions owed." (See Complaint ¶ 22; Decl. Ramos, ¶ 28, Ex. L.) The Complaint states that Defendant failed to pay contributions totaling $19,085.95. (Complaint ¶ 22.) Defendant's actions constitute a breach of the AVC and SAUSD PLAs (the "Subject PLAs"), the Master Agreement, and section 515 of ERISA, 29 U.S.C. § 1145. (Complaint ¶ 19.)

The Complaint further alleges that on or about August 31, 2022, Plaintiffs completed an audit of payroll records prepared and submitted by Defendant for work performed on the Subject Projects from June 2019 through August 2021 (the "Audit Period"), which revealed that Defendant did not report all hours worked and underpaid its contributions during that period by $6,047.10. (Complaint ¶ 23.) Plaintiffs additionally allege that Defendant has not submitted a monthly report, nor paid any contributions, since August 2021. (Complaint ¶ 24.) Pursuant to the Master Agreement, Defendant must pay Plaintiffs "the greater of $25.00 per month or ten percent (10%) of the total amount then due as liquidated damages" for each time Defendant failed to pay fringe benefit contributions or failed to pay them on time. (Complaint ¶ 28.) Plaintiffs also allege that pursuant to the Operating Engineers Trust Funds Joint Contribution

Committee Collection Policy & Procedures ("Joint Collection Policy") promulgated by the Plaintiffs' Trustees pursuant to the authority granted to them by the Master Agreement and/or Trust Agreements, as week as the Master Agreement, Trust Agreements, and ERISA, Defendant must pay interest on delinquent monthly contributions, liquidated damages, and attorneys' fees and costs to enforce the Trust Agreements. (Complaint ¶¶ 27–34.)

Plaintiffs seek default judgment on their claim for relief against Defendant for breach of written collective bargaining agreement and violation of section 515 of ERISA. (See Motion at 15–16; Complaint.) Evidence supporting the substantive merits of these claims is attached to the Declaration of Bernardo Ramos, and includes an example of the Trust Agreements, portions of the Master Agreement, the PLAs, the Joint Collection Policy, an example of Defendant's monthly reports, itemization of the known delinquency, and audits of unreported hours of covered work. (See Dkt. No. 30-1.) The Court finds Plaintiffs' Complaint sufficient; this factor weighs in favor of granting the Motion.

### 3. Sum of Money at Stake

The fourth Eitel factor examines the amount of money at stake in the action relative to the gravity of the defendant's conduct. PepsiCo, 238 F. Supp. 2d at 1176. Plaintiffs seek to recover "principal amount of $25,855.36 (consisting of fringe benefit contributions of $16,293.70, liquidated damages of $4,455.83, prejudgment interest of $4,455.83, and audit fees of $650.00), attorneys' fees of $24,083.73, and costs of $844.90, plus post-judgment interest" arising out of Defendant's alleged breach of obligations to the Trust Funds. (Motion at 16, 9.)

Here, Defendant repeatedly failed to make the required benefit contributions for its employees. Due to the continuous nature of Defendant's conduct, the affected employees may not receive their lost benefits absent court intervention. Plaintiffs' request for damages is commensurate with their statutory rights under ERISA. Thus, the Court finds this factor favors granting the Motion.

### 4. Possibility of Dispute Concerning Material Facts

Upon entry of default, all well-pleaded factual allegations are deemed true—except those pertaining to damages. TeleVideo, 826 F.2d at 917; Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. Feb. 11, 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). Because Defendant has failed to defend this action on the merits, it is unlikely that disputes as to material facts will arise. Accordingly, this factor favors default judgment.

### 5. Excusable Neglect

Under the sixth factor, the court must consider whether a defendant's default may have been due to excusable neglect. Eitel, 782 F.2d at 1472. This factor favors default judgment

where the defendant has been properly served or the plaintiff demonstrates the defendant is aware of the action. Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). Defendant was served with the summons and Complaint on May 5, 2023. (See Dkt. No. 14.) This Motion was also served by mail to Defendant's business address. (Dkt No. 26-2.) Accordingly, the Court concludes that Defendant's default is not the product of excusable neglect. Thus, this factor weighs in favor of granting the Motion.

### 6. Policy Favoring Decision on the Merits

"The final Eitel factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment." Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Generally, default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472 (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). But a defendant's failure to appear or otherwise defend an action "makes a decision on the merits impractical, if not impossible," and thus "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." PepsiCo, 238 F. Supp. 2d at 1177; see also Wecosign, 845 F. Supp. 2d at 1083. Here, Defendant's failure to defend against this action renders a decision on the merits impracticable. The final factor thus weighs in favor of default judgment.

On balance, the Eitel factors weighs in favor of default judgment against Defendant. Thus, the Court **GRANTS** the Motion.

### C. Requested Relief

Next, the Court examines whether Plaintiffs are entitled to the relief they request. Rule 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). While a court may accept facts as alleged in the pleadings, a plaintiff must submit evidence to prove the amount of damages. See Provision Interactive Techs., Inc. v. Prosperity Investments, LLC, 2019 WL 6729677, at *4 (C.D. Cal. July 19, 2019) ("To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit.") (internal quotations omitted). Plaintiffs seeks monetary relief and attorneys' fees and costs, each of which were prayed for in the Complaint. (See Complaint; Motion at 19.)

Plaintiffs prayed for each of these forms of relief in the SAC; the requested judgment does not exceed the amounts demanded in the pleadings. (See SAC, Prayer for Relief.) Section 502(g)(2) of ERISA provides:

> (1) In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan-
>
>> (A) the unpaid contributions,
>>
>> (B) the interest on the unpaid contributions,
>>
>> (C) an amount equal to the greater of-
>>
>>> (i) interest on the unpaid contributions, or
>>>
>>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>>
>> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>>
>> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g). "An award of fees, costs, liquidated damages, and interest under § 1132(g)(2) is mandatory if: (1) the employer is delinquent at the time of the award, (2) the district court enters judgment against the employer, and (3) the plan provides for such an award." Trustees of S. California IBEW-NECA Pension Plan, 2008 WL 4196627, at *4; see also Nw. Adm'rs, Inc. v. Albertson's, Inc., 104 F.3d 253, 257-58 (9th Cir. 1996).

   1. **Monetary Relief**

Plaintiffs request $25,855.36 in monetary relief, which consists of fringe benefit contributions of $16,293.70, liquidated damages of $4,455.83, prejudgment interest of $4,455.83, and audit fees of $650.00. (Motion at 16, 19.)

   a. **Unpaid Contributions**

According to the Audit, Defendant failed to pay fringe benefit contributions totaling $6,047.40 based on 210 hours Defendant failed to report to Plaintiffs during the Audit Period. (See Ramos Decl. ¶¶ 22–26, Ex. K.) Additionally, Defendant reported hours and corresponding fringe benefit contributions to Plaintiffs for work performed by its employees on the Subject Projects during June 2021 through July 2021, but failed to submit payment of the fringe benefit contributions owed in the amount of $19,085.95. (Complaint ¶ 22; Ramos Decl. ¶ 28, Ex. L.) Plaintiffs submit sufficient proof in the form of reports and payroll records to establish that Defendant still owes Plaintiffs $16,293.70 in unpaid fringe benefit contributions. (See generally Ramos Decl.)

   //

### b. Prejudgment Interest

Prejudgment interest is mandatory under ERISA, see 29 U.S.C. § 1132(g)(2)(B), and can be determined using the rate provided under the plan; here, that plan is the Joint Collection Policy, which requires delinquent employers like Defendant to pay interest at 8% per annum. (Ramos Decl. ¶ 16, Ex. I, § 2.) As such, "interest on the unpaid paid fringe benefit contributions owed by Defendant based on the Project Audit and monthly reports for June 2021 through July 2021, from the date they became delinquent through the date paid or, if unpaid, through October 16, 2023, totals $4,455.83." (Motion at 7 (citing Ramos Decl. ¶ 32, Ex. M).) The Court agrees.

### c. Liquidated Damages

An award of liquidated damages on unpaid contributions is required pursuant to 29 U.S.C. § 1132(g)(2)(C) at the rate provided for in the collective bargaining agreement or an amount equal to the amount of prejudgment interest, whichever is greater. See 29 U.S.C. § 1132(g)(2)(C); Operating Engineers Pension Trust v. Beck Engineering & Surveying Co., 746 F.2d 557, 569 (9th Cir. 1984). The Joint Collection Policy that requires delinquent employers to pay liquidated damages assessed at 10% of unpaid contributions. (Ramos Decl. ¶ 16, Ex. I.) Liquidated damages assessed at 10% of the unpaid and late paid fringe benefit contributions (totaling $25,133.35 in September 2021) is $2,513.34. (Ramos Decl., Ex. M.) Here, interest calculated on Defendant's unpaid and late paid contributions ($4,455.83) pursuant to 29 U.S.C. § 1132(g)(2)(B) is more than the 10% liquidated damages of $2,513.34; therefore, Defendant owes $4,455.83 in liquidated damages. (See Ramos Decl. ¶ 33, Ex. G, Art. XXI § H; Ex. I, § 2; Ex. M.)

### d. Audit Costs

The Trust Agreements state: "Any individual Employer determined by the audit to be delinquent in sums owed to the Trust shall pay to the Trust, in addition to such delinquent sums, the full amount of auditing costs incurred by the Trust in connection with such delinquency." (Ramos Decl. ¶ 17, Ex. A, § 6, Ex. I, ¶ 11.) Plaintiffs demonstrate with evidence that they incurred audit costs of $650.00, which Defendant now owes under the Trust Agreement. (Ramos Decl. ¶ 27.)

### 1. Attorneys' Fees and Costs

Because Plaintiffs have prevailed in their action to collect outstanding benefit fund contributions, an award of reasonable attorney's fees and costs is mandatory. See 29 U.S.C. § 1132(g)(2); Trustees of S. California IBEW-NECA Pension Plan, 2008 WL 4196627, at *5; Kemmis v. McGoldrick, 706 F.2d 993, 997 (9th Cir. 1983). In this District, awards of attorneys' fees in default judgments are governed by Local Rule 55-3. See L.R. 55-3. Pursuant to L.R. 55-3, "[w]hen a promissory note, contract or applicable statute provides for the recovery of reasonable attorneys' fees" and the amount of judgment is between $10,000.01 and $50,000, the amount of attorneys' fees allowed is $1,200 plus 6% of the amount over $10,000. See id. Under the Local Rule, Plaintiffs would be thus awarded $1,200 plus 6% of $15,855.36 ($951.32), for a total of $2,151.32.

Plaintiffs, however, urge the Court to award them $24,083.73 in attorneys' fees under a lodestar method of analysis and costs of $844.90, because in Plaintiffs' eyes, "[t]he use of Local Rule 55-3 to determine or limit the amount of attorneys' fees to be awarded in an ERISA case is contrary to applicable statutory law and case precedent." (Motion at 11.) The Court does not agree that the Local Rule is contrary to statute and case precedent in this District, as evidenced by Plaintiffs' failure to cite any binding authority in support of that claim. (See Motion.) However, courts are not required to adopt the proportional sum of attorneys' fees required under Local Rule 55-3 because the Rule provides that "[a]n attorney claiming a fee in excess of this schedule may file a written request at the time of entry of the default judgment to have the attorney's fee fixed by the Court" and "[t]he Court shall hear the request and render judgment for such fee as the Court may deem reasonable." L.R. 55-3; see Trustees of S. California IBEW-NECA v. Thorp Elec. Co., 2014 WL 12927051, at *5 (C.D. Cal. Mar. 24, 2014). The Court therefore considers Plaintiffs' request.

In ERISA cases, reasonable attorneys' fees "are calculated using a hybrid lodestar/multiplier approach." McElwaine v. US West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999). The lodestar figure is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

Plaintiffs' attorneys' hourly rates of $200 to $390 per hour for attorneys and $110.00 per hour for paralegals are reasonably within the range of fees charged by law firms for similar services in the area. (See Decker Decl. ¶ 3; Welch v. Metropolitan Life Ins. Co., 480 F. 3d 942, 947 (9th Cir. 2007) ("fees of "$375 to $400 per hour [are] in line with the prevailing market rate" for ERISA attorneys).) "[I]n appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975)." Id. at 622. These factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr, 526 F.2d at 70, abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992).

Plaintiffs' counsel's time records and costs are largely reasonable, especially given initial difficulties serving the Complaint on Defendant and the time associated with reviewing the relevant agreements and conferring with other entities and individuals about the status of the Subject Projects. (See Decker Decl. ¶ 5(h); Decker Decl., Ex A.) The Court will not, however, reward Plaintiffs' counsel for its delay in prosecuting this case. The Court was forced to issue an Order to Show Cause why the action should not be dismissed for lack of prosecution given

Plaintiffs' failure to request that the Clerk enter default after Defendant's failure to respond to the Complaint (see OSC), and to deny Plaintiffs' first motion for default judgment because counsel failed to comply with the Local Rules (see Order on First MDJ).  Therefore, the Court will not award fees for time billed in connection with reviewing or responding to the Court's OSC and subtracts $1,000 from the total requested by Plaintiffs.  The Court otherwise finds Plaintiffs' fees and costs reasonable, and awards $23,083.73 in attorneys' fees and $844.90 in costs.

### IV.    CONCLUSION

For the above reasons, Plaintiffs' Motion for Default Judgment is **GRANTED**.  Judgment shall be entered as follows:

1. Judgment is entered in favor of Plaintiffs against Defendant M.V.C. Enterprises, Inc. for the sum of $49,783.99, consisting of $25,855.36 in monetary relief, attorneys' fees of $23,083.73, and costs of $844.90, plus post-judgment interest.

2. Plaintiffs are **ORDERED** to mail a copy of this order and the judgment concurrently filed therewith to Defendant.  Plaintiffs shall file a proof of service with the Court within ten days of the date of this Order.

3. The December 11, 2023 hearing is **VACATED**.

4. The Clerk is directed to close the case.